UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

**CIVIL ACTION NO. 13-104-DLB**

**RHONDA RIVERA**                                                                               **PLAINTIFF**

vs.                       **MEMORANDUM OPINION AND ORDER**

**CAROLYN COLVIN, Acting**                                        **DEFENDANT**
**Commissioner of Social Security**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Rhonda Rivera filed her current applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) payments, alleging disability as of September 15, 2007. (Tr. 176-83). Plaintiff's claim was denied initially and on reconsideration. (Tr. 62-65). On September 7, 2011, Administrative Law Judge Gloria B. York conducted an administrative hearing at Plaintiff's request. (Tr. 104-06 and 125-42). On October 27, 2011, ALJ York ruled that Plaintiff was not entitled to benefits. (Tr. 7-27). This decision became the final decision of the Commissioner when the Appeals Council denied review on February 13, 2013. (Tr. 1-6).

On April 12, 2013, Plaintiff filed the instant action. (Doc. # 1). The matter has culminated in cross motions for summary judgment, which are now ripe for review. (Docs. # 10 and 11).

## II. DISCUSSION

### A. Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See id.* Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform his past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *See Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469,

2

474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.,* 14 F.3d 1107, 1110 (6th Cir. 1994).

**B.     The ALJ's Determination**

At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (Tr. 13). At Step 2, the ALJ found Plaintiff's fibromyalgia with diagnosed psoriatic arthritis, obesity, low back pain with degenerative disc disease, plantar fasciitis, mood disorder and post-traumatic stress disorder to be severe impairments within the meaning of the regulations. (*Id.*).

At Step 3, the ALJ found that Plaintiff does not have an impairment or combination of impairments listed in, or medically equal to an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 14). In reaching this conclusion, the ALJ first noted that Plaintiff's inflammatory arthritis/fibromyalgia does not meet the requirements of Listing 14.09 (inflammatory arthritis) because there was no medical evidence to suggest that she suffered from "persistent inflammation or deformity of one or more major peripheral weight-bearing or upper extremity joints, resulting in the inability to effectively ambulate or effectively perform fine/gross movements." (*Id.*). The ALJ then determined that Plaintiff's back pain does not meet the requirements of Listing 1.04 (disorders of the spine) because MRIs suggest that she suffers from only minimal degeneration, rather than a "spinal disorder resulting in the compromise of a nerve root or the spinal cord, with either nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication." (*Id.*). Plaintiff's plantar fasciitis failed to meet the requirements of Listing 1.02 (major dysfunction of a joint) because that listing requires major dysfunction

3

of a joint, generally resulting in an inability to ambulate effectively without use of a hand-held assistive device. (*Id.*). Although obesity has been deleted from the listing of impairments, the ALJ "considered the claimant's obesity and the combined effect of her impairments," and concluded that "while the claimant's obesity may increase the severity of coexisting and related impairments, the evidence does not establish presumptive disability." (Tr. 14). Finally, the ALJ determined that Plaintiff had only moderate limitation in social function and concentration, persistence and pace, which is insufficient to satisfy the requirements of Listing 12.04 (affective disorders) or 12.06 (anxiety-related disorders). (Tr. 15).

At Step 4, the ALJ concluded that Plaintiff has the residual functional capacity (RFC) to perform a limited range of light and sedentary work. (Tr. 15). Plaintiff can not only lift and carry twenty pounds occasionally and ten pounds frequently, she can stand, sit and walk six hours out of an eight hour day. (*Id.*). However, Plaintiff is limited to routine, repetitive tasks that require "only occasional interaction with supervisors and co-workers and no interaction with the general public in a low stress work environment." (*Id.*). The ALJ did not consider transferability of job skills because Plaintiff did not have past relevant work experience. (Tr. 19).

Accordingly, the ALJ proceeded to the final step of the sequential evaluation. At Step 5, the ALJ found that there were a significant number of jobs in the national economy that Plaintiff could perform. (Tr. 20). The ALJ based this conclusion on testimony from a vocational expert (VE), in response to a hypothetical question assuming an individual of Plaintiff's age, education, work experience, and RFC. (*Id.*). The VE testified that a hypothetical individual with Plaintiff's vocational profile and RFC could find work at the light

4

exertion level as a as a bench assembler (6,600 jobs in Kentucky/317,000 nationally) or packager/sorter (6,900 in Kentucky/424,000 nationally). (*Id.*). The VE further opined that Plaintiff could find sedentary work as a packager/sorter (1,100 in Kentucky/74,000 nationally) or a bench assembler (980 in Kentucky/53,500 nationally). (*Id.*). Based on the testimony of the VE and Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff is capable of making a successful adjustment to other work and thus concluded that he was not under a "disability," as defined by the Social Security Act. (Tr. 21).

**C.     Analysis**

Plaintiff advances three arguments on appeal. (Doc. # 10). First, Plaintiff argues that the ALJ erred in failing to give controlling weight to the opinions of her treating physician. Second, Plaintiff asserts that the ALJ did not fairly credit subjective testimony. Third, Plaintiff contends that the ALJ erred in assigning her a light residual functional capacity. Each of these arguments will be addressed in turn.

**1.     The ALJ did not commit reversible error by failing to give proper weight to the treating physician's opinions.**

In social security disability cases, the Commissioner depends on medical sources "to provide evidence, including opinions, on the nature and severity of [claimant's] impairment(s). 20 C.F.R. § 404.1527(d)(2). If the medical source has an ongoing treatment relationship with the claimant, such that he or she may be classified as a "treating source," the ALJ must give his or her opinion controlling weight if that opinion is "'well supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record.'" *Wilson v. Comm'r of*

5

*Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)(*quoting* 20 C.F.R. § 404.1527(c)(2)). While the medical expert may opine "on issues such as whether [claimant's] impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments," as well as claimant's residual functional capacity or the application of vocational factors, "the final responsibility for deciding these issues is reserved to the Commissioner." 20 CFR § 404.1527(d)(2).

Case law suggests that ALJs should not give a treating source's opinion less than controlling weight simply because another medical source reaches a conflicting conclusion. *Hensley v. Astrue*, 573 F.3d 263, 266-67 (6th Cir. 2009)(vacating and remanding the case because the ALJ "made his own medical evaluation [by] reaching a conclusion that lay between the two conflicting absolute views of the physicians"). Social security disability cases commonly involve conflicting medical assessments. *Id.* If ALJs were allowed to disregard treating source opinions every time another source presented contrary conclusions," it would be a rare case indeed in which [controlling] weight would be accorded." *Id.*

If the ALJ decides that the treating source's opinion is not entitled to controlling weight, he or she must consider the following factors in order to determine how much weight to give the opinion: (1) the length of the treatment relationship and the frequency of the examination; (2) the nature and extent of the treatment relationship; (3) supportability of the opinion; (4) consistency of the opinion with the record as a whole; and (5) the specialization of the treating source. *Wilson*, 378 F.3d at 541 (*quoting* 20 C.F.R. § 404.1527(c)(2)-(5)). ALJs generally "give more weight to the opinion of a specialist about medical issues related to his or her area of speciality than to the opinion of a source who

6

is not a specialist." 20 C.F.R. § 404.1527(c)(5).

The regulations require the ALJ to give "good reasons" for the weight given to a treating source's opinion. 20 C.F.R. § 404.1527(d)(2). Accordingly, "a decision denying benefits 'must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (1996). This "good reasons" requirement not only enables claimants to better understand the disposition of their case, it allows for meaningful review of the ALJ's decision-making process. *Wilson*, 378 F.3d at 544.

The record contains medical evidence and treatment notes, as well as opinion evidence offered by Plaintiff's treating physicians and state agency consultants. In October 2010, Dr. Jessica Pennington, who served as Plaintiff's primary care physician from April 2009 and September 2010, prepared a Medical Report indicating that Plaintiff's conditions imposed notable functional limitations on her. (Tr. 769-75). Dr. Pennington opined that Plaintiff could only stand or walk two hours out of an eight hour day, thirty minutes without interruption, and could only sit five hours out of an eight hour day, thirty minutes without interruption. (Tr. 772). Dr. Pennington further noted that Plaintiff was unable to reach, handle, feel, push or pull without experiencing severe pain. (Tr. 773). The Report also suggests that Plaintiff's depression limited her ability to cope with work stress. (Tr. 775).

In November 2009, Dr. Pennington requested that Neurosurgical Associates perform an outpatient consultation on Plaintiff. (Tr. 402-03). After evaluating Plaintiff, Dr. Steven Kiefer found that her strength in upper and lower extremities was intact. (Tr. 405). He also

reviewed an MRI of Plaintiff's lumbar spine, dated September 2009, and found that it was "nearly normal with just a bit of disc bulging in the proximal foramen on the left at L3-4." (Tr. 405). Dr. Kiefer concluded that, because Plaintiff suffered from "non-specific low back pain that is probably mechanical in nature," there was "no role for surgery [and t]reatment should by and large be symptomatic." (*Id.*).

Dr. Michael Schmidt of Central Kentucky Radiology performed another MRI of Plaintiff's lumbar spine about five months later. (Tr. 552). He noted that there was a "[s]mall disk protrusion at L5-S1 in a central/left paracentral location [that] contacts both descending S1 roots" but no evidence of nerve root displacement or effacement. (*Id.*). There was also right paracentral disk bulge at L4-5 mildly narrows the neural foramen, "but the nerve root exits without encroachment by the disk." (*Id.*).

Dr. Mansoor Ahmed, Plaintiff's rheumatologist, treated Plaintiff at three month intervals from April 2010 to July 2011. (Tr. 624-31 and 737-51). Dr. Ahmed prescribed Methotrexate, Prednisone and folic acid to treat Plaintiff's psoriatic arthritis and Flexeril and Cymbalta to treat Plaintiff's fibromyalgia. (Tr. 624, 630). He treated Plaintiff's pain with epidural injections but did not recommend surgery. (Tr. 626). During this time, Plaintiff described her symptoms as improving, although she occasionally experienced periods of increased pain and stiffness. (Tr. 740, 743, 746, 749). Dr. Ahmed repeatedly described Plaintiff's gait, station and mood as normal. (Tr. 741, 744, 747, 750). On Plaintiff's last visit, Dr. Ahmed noted that, although Plaintiff experienced tenderness in her hands, knees, ankles, feet and muscles, her fibromyalgia symptoms were stable and she demonstrated a good range of motion in her spine, shoulders, elbows, wrists and hips. (Tr. 750).

In May 2010, Kentucky Disability Determination Services requested a psychiatric examination of Plaintiff. (Tr. 582). After conducting such an evaluation, Dr. David Schraberg concluded that Plaintiff is not disabled from a psychiatric condition alone. (Tr. 583). In support of this proposition, Dr. Schraberg noted that Plaintiff had never been hospitalized for psychiatric issues and was receiving medications "for a mood disorder associated with her general health condition." (*Id.*).

After reviewing the medical records and opinions, with particular attention to the evidence cited above, the ALJ summarized her impressions as follows:

> [T]he Administrative Law Judge rejects the opinion of Dr. Pennington that the claimant can stand, walk and sit a total of seven hours during an eight-hour workday because such limitations are not supported by any objective findings in the record. It is notable none of the claimant's other treating physicians have opined she cannot work. The Administrative Law Judge has also considered the opinion of Dr. Schraberg that the claimant has a fair ability in all areas of psychological function, but finds the more specific limitations in the residual functional capacity. The Administrative Law Judge has also considered the opinions of state agency medical consultants and program physicians that the claimant can perform a wide range of light work and has a moderate limitation in mental function and finds those opinions generally supported.

Plaintiff argues that the ALJ should have given controlling weight to the Medical Report prepared by Plaintiff's primary care physician, Dr. Jessica Pennington. This Report indicates that Plaintiff's ability to work is severely limited, if not totally precluded, from work due to her inability to sit, stand and walk more than seven hours out of an eight hour day. (Tr. 769-75). Plaintiff further contends that the reasons given for rejecting Dr. Pennington's assessment are factually and legally invalid, not only because "[t]here is an abundance of objective medical evidence establishing the nature/severity of [Plaintiff's] condition," but also because another doctor's disagreement with a treating physician's assessment is not

9

grounds for rejecting the treating physician's opinion. (Doc. # 10 at 5).

By arguing that there is plenty of evidence in the record to establish the severity of her condition, Plaintiff is essentially asking this Court to re-weigh the evidence in the record and reach a more favorable conclusion than that drawn by the ALJ.[1] To accept this invitation would be to exceed the Court's limited scope of review in social security disability cases. Accordingly, the Court will abstain from conducting a *de novo* review of the evidence and focus solely on whether there is substantial evidence to support the ALJ's decision.

Plaintiff attempts to analogize the facts of this case to those present in *Hensley v. Comm'r Soc. Sec.*, in which the ALJ "split the difference" between diametrically opposing opinions made by Plaintiff's treating physician and another medical expert. Plaintiff argues that the ALJ improperly rejected Dr. Pennington's opinion simply because the record contained conflicting assessments from other physicians, such as Dr. Ahmed, Dr. Kiefer and Dr. Schraberg. However, this assertion ignores a critical aspect of the *Hensley* opinion. In that case, the ALJ did not articulate "good reasons" for giving less than controlling weight to the treating physician's opinion, nor did he cite any objective medical evidence that was inconsistent with the treating physician's opinion. He also did not specify

---

[1] In making this argument, Plaintiff takes issue with the ALJ's statement that, aside from Dr. Pennington, no other treating physician opined that Plaintiff could not work. According to Plaintiff, Dr. Mubawar Siddiqi and Dr. Rajan Joshi also indicated that Plaintiff was unable to perform job functions. (Tr. 710). Plaintiff presumably believes that these opinions, along with other evidence in the record, "establish the severity of her condition." However, the Commissioner correctly points out that the cited passage is part of Dr. Pennington's referral form, detailing Plaintiff's medical history, and therefore is simply a reiteration of Dr. Pennington's opinions. (*Id.*). Dr. Siddiqi's Plan/Recommendation report contains no opinions as to Plaintiff's work abilities. (Tr. 706). Likewise, Dr. Rajan Joshi's treatment notes include no assessments as to disability. (Tr. 734-35). The Court makes these clarifications simply to dispose of any indication that the ALJ was inaccurate in her characterization of the record.

how much weight he gave the treating physician's opinion according to the factors listed in 20 C.F.R. § 404.1527(c)(2). Instead, he arbitrarily chose to take the middle ground, and in doing so, failed to provide a reasoned decision for the reviewing court.

In this case, by contrast, the ALJ carefully cited to treatment notes, MRIs and opinion evidence from other treating physicians and state agency consultants, all of which supported her ultimate decision to reject Dr. Pennington's assessment. Although cognizant of Dr. Pennington's status as Plaintiff's primary care physician, the ALJ noted that her assessment of Plaintiff's limitations seemed excessive, especially when considered against other evidence in the record. For example, MRIs showed mild disk bulging but no nerve root displacement and treatment notes from Plaintiff's rheumatologist, a specialist in musculoskeletal disorders, consistently reported overall improvement in Plaintiff's condition.

The regulations allow the ALJ to give less than controlling weight to the treating physician's opinion in situations such as this one, where that opinion is inconsistent with other substantial evidence in the case record, as long as the ALJ gives "good reasons" for this decision. In this case, the ALJ gave a reasoned analysis for rejecting Dr. Pennington's opinion, complete with citations to supporting evidence in the record. Accordingly, the Court finds no error in the ALJ's treatment of Dr. Pennington's opinion.

## 2. The ALJ did not err in assessing Plaintiff's credibility.

When a claimant's complaints regarding the intensity and persistence of her symptoms are unsupported by objective medical evidence, the ALJ must make a credibility determination "based on a consideration of the entire case record." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007)(*quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186 at *4 (July 2, 1996)). While consistency between the claimant's complaints and the

case record supports claimant's credibility, "inconsistency, although not necessarily defeating, should have the opposite effect." *Id.* at 247-48. In considering the entire case record, the ALJ should review "any medical signs and lab findings, the claimant's own complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence contained in the record." *Id.* Sixth Circuit case law suggests that a claimant's work history or efforts to home-school his or her children may constitute other relevant evidence. *See Fossitt v. Comm'r Soc.Sec.*, No. 1:12-cv-276, 2013 WL 3566524 at * 5-6 (July 11, 2013)(finding that the ALJ's comment on Plaintiff's work history was "merely an appropriate finding that Plaintiff made no serious attempts to look for other work he could perform, after he became unable to continue as an electrician"); *Torres v. Comm'r Soc. Sec.*, No. 1:10-cv-109-HJW, 2011 WL 3107352 at * 10 (July 26, 2011)(concluding that "the ALJ may properly consider all of plaintiff activities, including child care and home-schooling"). Credibility determinations based solely on intangible or intuitive notions are impermissible. *Rogers*, 486 F.3d at 247.

The Sixth Circuit has recognized that the cause of a disability may not be the underlying condition itself, "but rather the symptoms associated with the condition." *Id.* at 247. This is particularly so when disability claims are based on fibromyalgia because the complaints of pain, stiffness, and fatigue often associated with the condition are the source of the alleged disability. *Id.* Claimants suffering from fibromyalgia generally "present no alarming signs," instead "manifest[ing] normal muscle strength and neurological reactions" and exhibiting a full range of motion. *Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 820 (6th Cir. 1988). Accordingly, the process of diagnosing fibromyalgia proceeds by (1) testing a series of focal points for tenderness and (2) ruling out other possible conditions

through objective medical and clinical trials. *Id.*

In such situations, the ALJ must utilize a two-part analysis to evaluate complaints of disabling pain. *Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 862 (6th Cir. 2011) (citing 20 C.F.R. § 416.929(a); *Rogers*, 486 F.3d at 247). First, the ALJ must determine "whether there is an underlying medically determinable physical impairment that could reasonably be expected to produce the alleged symptoms." *Id.* at 862-63. If the ALJ finds that such impairment exists, the ALJ must then consider the intensity, persistence and limiting effects of the symptoms on the claimant's ability to perform basic work activities. *Id.* at 863. When evaluating the claimant's symptoms, the ALJ should consider the claimant's daily activities; the location, duration, frequency, and intensity of symptoms; factors that precipitate and aggravate symptoms; the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; other treatment undertaken to relive symptoms; other measures taken to relieve symptoms; and any other factors bearing on the limitations of the claimant to perform basic functions. Soc. Sec. Rul. 96-7p, 1996 WL 374186 at *2-3 (July 2, 1996).

In *Rogers*, the ALJ determined that the claimant was not entirely credible because the claimant's "normal reflexes" and "normal sensory testing" did not support her subjective complaints. *Id.* at 248. The Sixth Circuit reversed and remanded the case, holding that "the decision in this case fails to contain specific reasons for the finding on credibility, supported by the evidence in the case record, nor is it sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to [the claimant's] statements and the reasons for that weight." *Id.* (internal citations and quotations omitted). The court further noted that "the nature of fibromyalgia itself renders

13

such a brief analysis and over-emphasis upon objective findings inappropriate." *Id.* By focusing on the objective evidence, the ALJ failed to consider "the lengthy and frequent course of medical treatment or nature and extent of that treatment, [and] the medications [the claimant] had been prescribed," among other possible considerations. *Id.*

After making a credibility determination, the ALJ must explain that decision with enough specificity "to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for the weight." 20 C.F.R. § 404.1529; Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *2 (Dec. 2, 1996). "Blanket assertions that the claimant is not believable will not pass muster, nor will explanation as to the credibility which are not consistent with the entire record and the weight of the relevant evidence." *Rogers*, 486 F.3d at 248. When the claimant suffers from fibromyalgia, the credibility determination is particularly important because subjective complaints play such an important role in diagnosing and treating the condition. *Id.* Once the ALJ has made the credibility determination, the reviewing court must give great weight and deference to that conclusion. *Id.*

Plaintiff argues that the ALJ erred in assessing Plaintiff's credibility because she did not evaluate Plaintiff's subjective symptoms in accordance with Social Security Ruling 96-7p. Although Plaintiff does not specify *which* of her subjective symptoms the ALJ failed to evaluate properly, the Court believes, based on her citation to *Rogers*, that she takes issue with the ALJ's evaluation of her fibromyalgia symptoms. Plaintiff also complains about the following comments made by the ALJ: (1) her suggestion that Plaintiff would rather stay at home with her children than work; (2) her impression that Plaintiff had no history of working at the substantial gainful activity level; and (3) her observation that there is no objective

14

documentation of her daughter's accidental scalding, which allegedly precipitated Plaintiff's post-traumatic stress disorder.

In evaluating Plaintiff's fibromyalgia symptoms, the ALJ utilized the two-part *Rogers* test. (Tr. 18). First, she noted that the "claimant's medically determinable impairments can reasonably be expected to cause the alleged symptoms." (*Id.*). The ALJ then determined that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 18-19). This conclusion was based in part on treatment notes from Plaintiff's rheumatologist, indicating that her fibromyalgia was stable and her overall condition was improving, despite some periods of increased pain. (*Id.*). Because Dr. Ahmed has experience in treating musculoskeletal disorders, his treatment notes are entitled to some weight. Plaintiff's daily activities also played a role in the ALJ's credibility assessment. (*Id.*). Despite Plaintiff's claim that "she relied on her mother and older daughters to cook and perform all household chores, she indicated that she is able to care for her two young daughters, drive and attend church." (*Id.*). Plaintiff also sought vocational rehabilitation services, although participation was delayed." (*Id.*).

The ALJ's analysis not only incorporates the two-part test used to assess fibromyalgia symptoms, it avoids conclusory credibility assessments like the one at issue in *Rogers*. Rather than simply noting that Plaintiff had normal reflexes and sensory testing, which is not atypical for fibromyalgia patients, the ALJ relied on treatment notes and evidence of Plaintiff's daily activities, as permitted by the regulations. Therefore, the Court finds that the ALJ properly evaluated Plaintiff's subjective symptoms.

To the extent that Plaintiff complains about specific comments from the ALJ, the Court would note that Sixth Circuit case law permits the ALJ to consider both work history and home-schooling efforts when making credibility assessments. Her impression that Plaintiff would rather stay at home than work is more than an intangible or intuitive notion, as the record reflects that Plaintiff has no history of gainful employment and has been home-schooling her children for a few years now. As to the ALJ's observation that there was no objective evidence in the record documenting her daughter's injury, the Court sees this as more of an account of what is and is not in the record, rather than an expression of doubt as to the severity of her daughter's injury. Although the record contains multiple references to Plaintiff's post-traumatic stress disorder, which developed after witnessing her daughter's accidental scalding, the record contains only one letter referencing her daughter's skin grafts and surgeries. (Tr. 403). Because the severity of her daughter's injury likely has a positive correlation with Plaintiff's post-traumatic stress disorder, further documentation would certainly have been helpful to the ALJ in comparing the severity of Plaintiff's symptoms against the case record.

The ALJ gave a reasoned analysis of her decision to discount Plaintiff's credibility, based on her consideration of Plaintiff's complaints in conjunction with the record as a whole. In rendering this decision, the ALJ took care to apply the correct standard and cite to supporting evidence in the record. Any observations made about Plaintiff's history and lifestyle were permissible under the regulations as well as Sixth Circuit case law. Accordingly, the Court finds no error in the ALJ's credibility assessment.

16

### 3. The ALJ did not err in assigning Plaintiff a light residual functional capacity.

An RFC assessment must identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, taking into account the following functions: 1) physical abilities, such as sitting, standing, walking, lifting, carrying, pushing and pulling; 2) mental abilities, such as understanding, remembering, and carrying out instructions, and responding appropriately to supervision, co-workers, and work pressures in a work setting; and 3) any other abilities affected by his/her impairment(s). Soc. Sec. Rul. 96-8p, 1996 WL 374184 at *1 (July 2, 1996)(incorporating functions listed in 20 C.F.R. §§ 404.1545 and 416.945). Only after an ALJ has performed this function-by-function evaluation may a claimant's RFC be expressed in terms of sedentary, light, medium, heavy or very heavy work. *Id.* When there is no subjective allegation or objective evidence of a physical or mental limitation or restriction of a specific functional capacity, the adjudicator must consider the claimant to have no such limitation or restriction. Soc. Sec. Rul. 96-8p(3).

As discussed above, the ALJ found some of Plaintiff's alleged impairments to be more severe than others. The objective medical evidence also reflected that some of Plaintiff's conditions, while not insignificant, were less severe than her testimony indicated. After making these determinations, which this Court has already upheld, the ALJ incorporated the limitations that she found to be justified in assigning a light RFC. Accordingly, the Court finds no error.

## III. CONCLUSION

Accordingly, for the reasons stated,

**IT IS ORDERED** that the decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. # 10) is hereby **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. # 11) is hereby **GRANTED.**

A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

This 14th day of February, 2014.



Signed By:
David L. Bunning
United States District Judge

G:\DATA\SocialSecurity\MOOs\Lexington\13-104 Rivera MOO.wpd